IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SIONE POUHA,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING RESTITUTION AND SETTING RESTITUTION PAYMENT SCHEDULE<br><br>Case No. 2:23-cr-00170<br><br>Judge Tena Campbell |

In this criminal action, Defendant Sione Pouha pled guilty to one count of Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1). (See Indictment, ECF No. 1; Statement in Advance of Plea, ECF No. 95 at 4.) The court held a sentencing hearing on November 25, 2025, at which the court sentenced Mr. Pouha to 57 months in the custody of the Bureau of Prisons, with a three-year term of supervised release to follow. (Min. Entry, ECF No. 104.) But the court allowed the parties to provide further briefing on the issue of restitution, as the parties disputed the appropriate amount of restitution that the court should impose.

In his Statement in Advance of Plea, Mr. Pouha indicated that he understood "that the United States will request and that the Court may order that [he] pay restitution." (ECF No. 95 at 6.) And he agreed to pay "all restitution as ordered by the Court." (Id.) Nevertheless, Mr. Pouha asserted at sentencing that the restitution requested by the government—$247,060—was too high.

1

For the following reasons, the court agrees, and instead orders that Mr. Pouha pay restitution in the amount of $123,530.

## BACKGROUND

The charge to which Mr. Pouha pled guilty is connected to an incident that occurred at this courthouse.  On April 30, 2023, at approximately 4:00am, police officers from the Salt Lake City Police Department were investigating an unrelated case nearby when they heard gunshots near the United States Courthouse.  (Presentence Investigation Report (PSR), ECF No. 99 at ¶ 6.) The officers found shell casings—four in total, two 9mm and two .45 caliber—on the courthouse steps.  (Id.)  They also discovered that two windows, including the large central window, on the west side of the courthouse had been struck by gunfire.  (Id. ¶ 7.)

A short time after, officers discovered Mr. Pouha moving through the bushes at the nearby Little America Hotel and then attempting to hide in the underground parking structure. (Id. ¶ 8.)  The police later found his jacket on the north side of the hotel between a bush and a brick wall.  (Id. ¶ 10.)  Meanwhile, back at the courthouse, a third security officer found a Ruger 1911 semiautomatic pistol near the guard station where courthouse security guards had witnessed someone squatting down.  (Id.)  In his Statement in Advance of Plea, Mr. Pouha admitted that he knowingly possessed the Ruger 1911 semiautomatic pistol and .45 caliber ammunition.  (ECF No. 95 at 4.)

At sentencing, the government played a video that had been recorded by the courthouse security cameras.  The video shows a group of men walking past, followed by a second group of men of which Mr. Pouha is a member.  Mr. Pouha then climbs the courthouse steps, draws a pistol, and fires towards the first group.  Although the video has no sound, the court agrees with the government that Mr. Pouha appears to have been the first person to fire.  The other men from

the second group who are visible on camera after the first group has passed do not show any reactions until Mr. Pouha fires his weapon. But it is undisputed that Mr. Pouha fired <u>away</u> from the courthouse, and that it was not his bullets that broke the two windows. Rather, it appears that the windows were damaged by an unknown shooter returning fire on Mr. Pouha.

## ANALYSIS

The court's authority to impose restitution on Mr. Pouha and the procedure for issuing and enforcing an order of restitution are codified at 18 U.S.C. §§ 3663 and 3664. These provisions were originally enacted through the Victim and Witness Protection Act (VWPA) of 1982, which allowed, but did not mandate, restitution for most crimes. <u>See</u> 18 U.S.C. § 3663(a)(1) (1995) ("The court, when sentencing a defendant convicted of an offense under this title[,] … <u>may</u> order … that the defendant make restitution to any victim of such offense." (emphasis added)).

In 1996, Congress enacted the Mandatory Victims Restitution Act (MVRA), which amended §§ 3663 and 3664 and added a new provision, § 3663A, which required courts to impose restitution for certain crimes, such as crimes of violence. 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(i). As amended, § 3663 still allows the court discretion to impose restitution for other crimes not covered by the MVRA. Specifically, the court may order that "the defendant make restitution to any victim" of an offense under title 18, as well as certain offenses under titles 21 and 49. 18 U.S.C. § 3663(a)(1)(A). In addition, the court may "order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." <u>Id.</u> § 3663(a)(3).

Before exercising its discretion to award restitution under § 3663(a)(1), the court "shall consider … the financial resources of the defendant, the financial needs and earning ability of the

3

defendant and the defendant's dependents, and such other factors as the court deems appropriate." Id. § 3663(a)(1)(B)(i).

Where a court determines that an award of restitution is appropriate, whether such award is mandatory or discretionary, the procedures for issuing the restitution order are contained in § 3664.  First, the court determines the amount of restitution owed: "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." Id. § 3664(f)(1)(A).  Any dispute about this amount shall be resolved by the court by a preponderance of the evidence and "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." Id. § 3664(e).

After determining the amount of restitution owed, the statute permits the court wide latitude in structuring how a defendant must pay that restitution.  For instance, the court may "direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." Id. § 3664(f)(3)(A).  But the court must consider the defendant's financial circumstances when determining an appropriate repayment plan. See id. § 3664(f)(2); see also United States v. Wilson, 416 F.3d 1164, 1170 (10th Cir. 2005) ("The defendant's economic circumstances are relevant in fixing a payment schedule.").  Specifically, the statute instructs the court to consider:

> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
>
> (B) projected earnings and other income of the defendant; and

4

>(C) any financial obligations of the defendant, including obligations to dependents.

18 U.S.C. § 3664(f)(2).

The statute also allows the court to adjust a defendant's payment schedule after receiving a notification of a change in the defendant's economic circumstances: "Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." Id. § 3664(k).

Courts have noted that the restitution statute, as amended by the MVRA, contains potentially conflicting directions about whether a court may consider a defendant's economic circumstances when determining not just whether to order restitution, but also the appropriate amount of restitution. The Seventh Circuit has summarized the competing provisions as follows:

> The amendments to § 3664 …, read in conjunction with the language of § 3663, appear to create some tension with respect to the criteria employed by district courts in deciding whether to order restitution and those employed by a district court in deciding the amount of the restitution order. Specifically, restitution pursuant to § 3663 is discretionary; and, in determining whether to exercise this discretion, the district court is required to consider the financial resources of the defendant. However, § 3663(d) also requires that any restitution order be issued and enforced in accordance with § 3664. Section 3664, in contrast to § 3663, forbids a district court from considering the economic circumstances of a defendant in fashioning a restitution award; rather, the district court must order restitution in the "full amount" of the victim's losses. 18 U.S.C. § 3664(f)(1)(A). Under § 3664, a district court may consider the defendant's financial circumstances only in determining the method of payment and in setting the payment schedule.

United States v. Day, 418 F.3d 746, 753–54 (7th Cir. 2005).

The Seventh Circuit resolved this tension by mandating a bifurcated approach. Under this framework, a district court must first determine <u>whether</u> there is to be an award of restitution. Id. at 754 (citing United States v. Cummings, 189 F. Supp. 2d 67, 72

5

(S.D.N.Y. 2002)).  When making this discretionary determination, the court must consider the defendant's financial circumstances.  Id.  But once the decision to award restitution has been made, the court has no discretion to limit the amount of restitution awarded.  Instead, the court must award the full amount of the victim's loss.  Id.

That framework has been adopted by the Fourth and Sixth Circuits.  See United States v. Diaz, 865 F.3d 168, 180–81 (4th Cir. 2017); United States v. Sizemore, 850 F.3d 821, 826–27 (6th Cir. 2017).  And it is the framework that the government urges the court to adopt here, although the government has candidly admitted that, at the sentencing hearing, it "suggested the court may order partial restitution based on the discretionary nature of § 3663 …."  (Gov't's Position on Restitution, ECF No. 106 at 5.)  Having now carefully reviewed the statute, the United States points to 18 U.S.C. § 3664(f) and maintains that the court must order restitution "in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."  (Id. (citing 18 U.S.C. § 3664(f)(1)(A)).)

But it does not appear that the Tenth Circuit has directly considered the tension described above, and not all district courts have adopted the approach followed by the Seventh Circuit. The United States District Court for the District of Columbia, for instance, has questioned whether the discretionary restitution statute should be read to preclude the district court from adjusting the amount of restitution ordered:

> [U]nlike the MVRA, the VWPA is a statute intended to vest the sentencing court with discretion.  It includes a specific provision permitting courts to consider "the financial resources of the defendant, [and] the financial needs and earning ability of the defendant and the defendant's dependents" in determining whether to order restitution.  See 18 U.S.C. § 3663(a)(1)(B)(i)(II).  Yet under the interpretation of the VWPA and Section 3664 adopted by the Fourth, Sixth, and Seventh Circuits, once a court determines in its discretion that restitution to the victim is appropriate under the VWPA, it must award full restitution without regard to the defendant's financial resources and future earning ability.  But is the discretion vested in sentencing courts through the VWPA really so limited?

6

United States v. Williams, 353 F. Supp. 3d 14, 26 (D.D.C. 2019).

The District of Columbia court found that where there is tension between the substantive provisions of § 3663, which vest the court with discretion to order restitution and mandate that the court consider a defendant's financial resources, and the procedural provisions of § 3664, which preclude consideration of a defendant's financial resources, the substantive provisions must prevail.  Id.; see also United States v. Thompson, 792 F.3d 273, 277–78 (2d Cir. 2015) (noting that the procedural provisions of § 3664 do not "impose any independent restitution obligations on a defendant but simply … set the procedures by which the sentencing court imposes [the] restitution order [already] calculated").  The District of Columbia court therefore held as follows:

> The Court rejects the all-or-nothing approach of the Fourth, Sixth, and Seventh Circuits and concludes that the two provisions may be read together to permit courts to exercise the discretion Congress intended to give them under the VWPA.  Courts must be able to set or reduce the amount of restitution based on the defendant's present and future economic circumstances when determining both whether to order restitution and in setting the amount of restitution.  Otherwise there is little discretion left for courts to exercise and no relevant distinction between the mandatory MVRA, which Congress enacted in 1996, and the VWPA.  Congress intended to vest courts with discretion when it enacted the VWPA in 1982, and that did not change in 1996.

Williams, 353 F. Supp. 3d at 26–27 (citations omitted).

The court agrees with the approach adopted by the District of Columbia court.  It is impractical to read the restitution statute to require the court to consider a defendant's financial resources when determining whether to order restitution while simultaneously requiring the court to blind itself to any consideration about the amount of restitution that the court will order.  After all, almost all defendants can pay some amount of restitution—but the total amount of restitution

7

that a defendant can pay is highly dependent on a defendant's financial resources, and the needs and earning ability of the defendant and the defendant's dependents.

Mr. Pouha's case illustrates the difficulties of the all-or-nothing framework, as such an approach would present the court with two equally unattractive options. Having discussed Mr. Pouha's work history and financial situation with the United States Probation Office, the court finds that Mr. Pouha does have some ability to pay restitution. But the repayment of $247,060 in restitution is outside Mr. Pouha's reach absent a significant change from his past work history.

The court finds that Mr. Pouha's conduct in this matter warrants a sizeable restitution order. His actions were reckless in the extreme, exhibiting a disregard not only of property but of life. And as the Tenth Circuit has noted, a restitution order "serves punitive purposes." United States v. Anthony, 25 F.4th 792, 797–98 (10th Cir. 2022) (quoting Paroline v. United States, 572 U.S. 434, 456 (2014)).

But the Tenth Circuit has also recognized that "the primary purpose of restitution is to make victims whole," not to punish a defendant. Id. And a restitution order on the scale of a quarter of a million dollars is disproportionately punitive for the crime for which Mr. Pouha pled guilty. The court did not impose a fine in this case, finding that Mr. Pouha did not have the ability to pay a fine, but it is notable that the guideline provisions indicate a fine range from $10,000 to $95,000 for this offense level. USSG § 5E1.2(c)(3); (see also PSR ¶ 78). Indeed, the statutory maximum fine for any felony is $250,000. 18 U.S.C. § 3571(b)(3). The proposed restitution order of $247,060 is 2.5 times the high end of the guideline range for a fine imposed in this matter and nearly exceeds the statutory maximum for any fine. And while the statutory provisions for the imposition of a fine are distinct from those for the imposition of an order of

8

restitution—and in no way preclude the court from imposing a restitution order that exceeds $250,000—, the court finds the comparison helpful.

The court is also concerned about whether Mr. Pouha knowingly and voluntarily agreed to a restitution order of this magnitude, as he pled guilty before the General Services Administration (GSA) had provided the parties with a breakdown of the cost of replacing the two windows.[1] It is undisputed that Mr. Pouha was unaware of the potential scale of the restitution order when he entered his guilty plea. And while a reasonable person would have recognized that replacing the custom windows would be expensive, such a person would likely contemplate that cost within a range of $50,000 to $150,000. The total replacement cost—surprising even the court—was much higher.[2]

At sentencing, the court provided Mr. Pouha the opportunity to move to withdraw his guilty plea. Mr. Pouha rejected that offer and chose to proceed with sentencing. But, as noted above, all parties at the sentencing hearing believed that the court could adjust the restitution order based on Mr. Pouha's financial circumstances. The court therefore finds there is at least some question about whether Mr. Pouha has knowingly and voluntarily agreed to a restitution order of $247,060.

---

[1] Mr. Pouha's counsel goes even further, suggesting that the government has unclean hands for negotiating a plea offer without providing Mr. Pouha the total cost analysis. (Def.'s Position on Restitution, ECF No. 105 at 1–2.) But the court finds no evidence that the prosecution engaged in any chicanery. The prosecution only received a cost breakdown from GSA—which was later adjusted slightly—in late September 2025. (ECF No. 106 at 2.) The prosecution then promptly provided this information to the defense. (Id.)

[2] The court has confirmed with GSA that the replacement cost for the two windows is accurate. The high cost resulted from the size of the largest of the two windows, the specialized material, and the high labor cost of replacement, which involved transportation logistics and significant difficulties detaching and reattaching the protective metal sunscreens in that section of the building.

Mr. Pouha did make an alternative suggestion at sentencing—namely, to pay half the full restitution amount. He emphasized that the gunshots he fired were not, in fact, the shots that broke the two windows. And while the court finds there is no question that Mr. Pouha's actions led to the broken windows, it is true that at least one other shooter was involved.

The court is persuaded that Mr. Pouha's suggestion is reasonable. The court also notes that there is statutory support to cut the full cost of the window replacement in half for two reasons. First, § 3664 permits the court to apportion liability "among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant" where more than one defendant contributed to a victim's loss. 18 U.S.C. § 3664(h). The court has found no cases where courts have apportioned liability among a defendant and an unknown actor who contributed to a victim's loss where that actor has not been indicted as a co-defendant—but the court has also found no case prohibiting the court from considering a known defendant's contribution to the overall loss suffered by the victim. And as noted above, the court reads the procedural provisions of § 3664 expansively where possible so as not to intrude upon the discretion permitted to the court under the substantive provisions of § 3663.

Second, the court finds relevant that § 3663 provides two separate circumstances under which the court may issue a discretionary restitution order. First, the statute authorizes restitution for crimes listed in title 18, as well as some crimes under titles 21 and 49. 18 U.S.C. § 3663(a)(1)(A). The parties do not dispute that the court may order Mr. Pouha to pay restitution under this provision. But the statute also permits the court to order restitution "to the extent agreed to by the parties in a plea agreement." Id. § 3663(a)(3). This provision applies to "any criminal case[,]" not simply other crimes that are not covered by § 3663A or § 3663(a)(1), and therefore serves as an alternative basis under which the court may order restitution here. The

10

court has identified its concern about whether Mr. Pouha can be said to have agreed to pay $247,060 in restitution in his plea agreement. But given the back-and-forth with Mr. Pouha at sentencing, the court has no qualms about finding that Mr. Pouha has agreed to pay half that amount.

The presence of § 3663(a)(3) further supports the court's interpretation that, despite the procedural provisions of § 3664, the discretionary restitution statute continues to allow the court some discretion in determining the amount of restitution owed. The framework adopted by the Fourth, Sixth, and Seventh Circuits essentially ignores § 3663(a)(3), as that framework requires a district court to order restitution under § 3664 for the full amount of each victim's losses, regardless of the extent to which the parties agreed to restitution in a plea agreement.[3] See id. § 3663(d) (requiring all orders of restitution under § 3663, including restitution orders under § 3663(a)(3), to be issued and enforced according to § 3664).

While recognizing that several circuit courts have adopted a contrary interpretation of the restitution statute, the court is persuaded that § 3663 should be read to permit the court some discretion about the amount of restitution ordered. The court is also persuaded that, under the unique facts of this case, a restitution order for half the amount of the GSA's losses is appropriate. A restitution order for $123,530 accounts for the extent to which Mr. Pouha can be said to have knowingly and voluntarily agreed to restitution; it also reflects the extent to which Mr. Pouha contributed to the damage that GSA suffered.

---

[3] To avoid a conflict with the provision of § 3664 requiring the court to order restitution in the full amount of each victim's losses, § 3663(a)(3) could be read to permit an order of restitution in any criminal case to the extent that the parties agree on the identity of the victims or other individuals to whom the defendant owes restitution. But this interpretation adds a limitation that is not present in the text of the statute. A plain reading of the phrase "to the extent agreed to" suggests that the provision allows the parties to negotiate the amount of restitution as well as the identity of any victims or individuals to whom the defendant owes restitution.

Regardless of the amount of restitution ordered, the statute is clear that the court must consider Mr. Pouha's resources when determining an appropriate repayment plan. 18 U.S.C. § 3664(f)(2). As the court has noted, Mr. Pouha's financial circumstances are limited, but he does have some work history and an ability to pay. Having consulted with the United States Probation Office, the court sets the following repayment schedule: $15 per month while Mr. Pouha is incarcerated, followed by $150 per month once Mr. Pouha is released from the custody of the Bureau of Prisons. Mr. Pouha is reminded that he must "notify the court and the Attorney General of any material change in [his] economic circumstances that might affect [his] ability to pay restitution." Id. § 3664(k).

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1. Mr. Pouha is ordered to pay restitution to the General Services Administration in the amount of $123,530.00.

2. Restitution shall be made at a rate of $15.00 per month while Mr. Pouha is incarcerated. Upon release from imprisonment, payments will be made at a minimum rate of $150.00 per month or as otherwise determined by the United States Probation Office.

3. The court waives interest on the restitution award.

DATED this 5th day of January, 2026.

BY THE COURT:

*Tena Campbell*
Tena Campbell
United States District Judge